14071

McGEE *ET AL.* v. F. W. POE MFG. CO.

(180 S. E., 48)

*Messrs. Mann, Plyler & Arnold,* for appellants,

*Messrs. Haynsworth & Haynsworth,* for respondent,

May 23, 1935.

The opinion of the Court was delivered by MR. T. S. SEASE, ACTING ASSOCIATE JUSTICE.

On February 23, 1933, F. W. Poe Manufacturing Company, a textile manufacturing plant of Greenville, S. C., purchased 300 bales of cotton from McGee, Dean & Co., a partnership and cotton merchants of Leland, Miss., at an agreed price, which cotton was duly shipped and delivered.

For the sake of convenience and brevity, appellants will be hereafter referred to as McGee, Dean, and respondent as Poe.

The cotton was sold and delivered in two lots, one of 200 and the other of 100 bales. The seller through its bank at Leland, Miss., drew on the purchaser by two sight drafts with bill of lading attached to each through the South Carolina National Bank of Greenville, S. C., a bank at which Poe did business and carried an account. On March 2d and 4th, respectively, Poe issued its checks on and payable to said South Carolina National Bank, and procured the drafts and the bills of lading, but the proceeds were not transmitted to McGee, Dean. All banks were closed on March 4th by Presidential proclamation, and before the proceeds in question were forwarded to the seller. Thereafter the South Carolina National Bank did not reopen for approximately three months, when it reopened conditionally under a conservator.

The bank some months later was reopened under a new arrangement by which certain liquid assets were transferred to the new organization at par, and 40 per cent. was paid to depositors and creditors. All the remaining assets were trusteed for an indefinite period for the benefit of the remaining 60 per cent. due depositors and creditors. Although plaintiff did not agree to the reorganization plan, and there is no showing that the defendant did, they apparently became bound thereby to the extent of their interests under the operation of the Bank Conservation Act passed by the United States Congress and approved on March 9, 1933 (12 U. S. C. A., §§ 201-211), under which this bank apparently reorganized and reopened. By written stipulation after the beginning of this action, the plaintiff and the defendant agreed that the 40 per cent which the bank was ready to pay should be paid to the plaintiff on account of this claim without prejudice to the rights of the parties.

After allowing this credit, there is a balance of $6,533.43 with interest involved in this suit.

Plaintiff instituted this suit on July 15, 1933, a little more than four months after the sale and delivery of the cotton, to recover the purchase price. The defendant denied liability and relied on its alleged payment to the South Carolina National Bank. It is admitted by both parties that these sales were made subject to the 1925 Southern Mill Rules amended, the pertinent clause being Paragraph IV, subdivision (b), which is as follows: "In cases where buyer elects to specify some particular bank through which drafts on them are to be drawn, the buyer shall be held liable for any loss seller may sustain by routing drafts through such bank."

Under said Southern Mill Rules, the seller was to draw three days' sight draft on the buyer with bill of lading attached without exchange or collection charges, and the buyer is expressly given no right to delay payment.

At the conclusion of the testimony, the presiding Judge of his own motion ordered a nonsuit, after overruling motions for a directed verdict made by both parties. The trial Judge held in substance that no loss had been proven, and that such loss could not be ascertained until after McGee, Dean had exhausted its remedy against the South Carolina National Bank, or sued it to insolvency and proved that it is insolvent. The principal questions raised by the appeal may be briefly stated as follows:

1. Was W. H. Wilson, Inc., the agent of Poe in the transaction?

2. Did Poe specify the bank through which the drafts were drawn?

3. Was there any evidence of loss sustained by McGee, Dean in the circumstances?

4. Was the action prematurely brought?

It is obvious that Questions 3 and 4 should first be disposed of since the determination of the question as to

whether or not the action was prematurely brought is primary, and in disposing of this question it is necessary to analyze the question as to whether or not there was evidence of loss sufficient for the appellant to sustain its cause of action against the respondent.

The respondent here was principal debtor, and there is evidence that it specified the South Carolina National Bank of Greenville, S. C., as the bank through which appellant was to draw drafts on it in settlement for the cotton purchased. If the bank was so specified by respondent, there is in the Mill Rule no condition to be performed by the drawer before asserting a claim against the drawee. If it had been the intent of the parties that the drawer should first exhause its remedies against the bank, some such stipulation could have easily been incorporated. Respondent claims that to show any loss recoverable against it, appellant must show that the bank cannot be made to respond. We cannot subscribe to this construction of the Mill Rule, and we do not believe the parties ever intended this interpretation. This was a cash transaction, and if respondent, as debtor, desired to change its status to that of a mere conditional guarantor, then the condition should have been clearly stated, since a guarantor cannot claim only conditional responsibility from ambiguous language, as such language is usually construed most strongly against the guarantor. The appellant could have sued both the respondent and the bank, but it was in no way bound to do so. It could properly maintain the action against respondent without first exhausting its remedies against the bank. Therefore appellant's action was not prematurely brought against the respondent in the circumstances.

At 12 R. C. L., page 1089, § 42, we find: "On an absolute guaranty the guarantor is unconditionally bound to satisfy the obligation at its maturity. There is no obligation on the part of the creditor to proceed against the principal debtor, and if the latter fails to pay, an action may

generally be maintained against the guarantor, without a demand or legal proceeding against the principal. Nor is a creditor, before proceeding against the guarantor, under any legal obligation to resort to securities given by the principal debtor."

In Childs, Suretyship Guaranty, page 7, it is said: "Technically, the guarantor does not undertake payment by himself, but that the principal will pay, though when the act to be performed is the payment of money, a default by the principal results practically in payment by the guarantor, but if the act to be performed in other than the payment of money   *   *   *,   the guarantor's contract is more clearly seen—that the principal will perform."

A guaranty is said to be "a promise to answer for the payment of some debt or the performance of some duty in case of the failure of another person, who is himself, in the first instance, liable to such payment or performance." *Ruberg v. Brown*, 71 S. C., 287, 293, 51 S. E., 96, 98; *Carroll County Savings Bank v. Strother*, 28 S. C., 504, 6 S. E., 313; *Mott Iron Works v. Clark*, 87 S. C., 199, 69 S. E., 227, 228.

The language employed is to have a reasonable interpretation, according to the intention of the parties as disclosed by the instrument, read in the light of the surrounding circumstances and the purpose for which it was made. See Stearn's Suretyship, page 17.

In *Mott Iron Works v. Clark, supra,* "I will see that you are protected in any dealings that you may have with this corporation," was held to be a guaranty and with respect to sales made under it was absolute and unlimited.

In *Georgian Co. v. Britton et al.,* 141 S. C., 136, 139 S. E., 217, 218, in holding that where the terms of a guaranty did not import some condition precedent to the liability of the guarantor, the guaranty is absolute, the Court reduced to a minimum the distinction between an absolute and a conditional guarantor. The Court quotes the following

from 28 C. J., page 395: "A guaranty is deemed to be absolute unless its terms import some condition precedent to the liability of the guarantor."

The syllabus on this point is as follows: "Where terms of a guaranty do not import some condition precedent to liability of guarantor, guaranty is absolute, or guaranty of payment, rather than of collection."

In *Fenner v. Cahn et al.,* 146 Misc., 210, 261 N. Y. S., 528, 530, Cahn executed the following guaranty "\* \* \* I/we herewith warrant, guarantee and otherwise insure you against any and all liability that has and may hereafter rest on you by reason of any losses being sustained in the said account."

In holding that this was a guaranty against loss and that plaintiffs could call on the guarantor without first resorting to remedies against the debtor, the Court said: "A guaranty is a contract to be construed by the principles governing other contracts, the guide being the intention of the parties as expressed in the guaranty and illuminated by the setting, fashioned by the adjacent circumstances. The verbiage of the guaranty here, the purpose for which it was given, the object sought to be gained thereby, and the other interpretative circumstances, clearly indicate that the intention of Cahn was to make good any loss which the plaintiffs would sustain as a consequence of carrying Kevorkian's marginal account."

Under the terms of this Mill Rule which constitutes the pertinent contract provision controlling the rights of the parties in this case, the drawer of a draft has the right to assert a claim for loss against the drawee when the bank specified by such drawee fails to transmit the proceeds paid to such bank by the drawee within a reasonable time, and a reasonable time would be such period as is ordinarily required for the proceeds to flow through the regular banking channels to the original bank in which the draft was deposited for collection by the drawer.

If the appellant can show that it failed to receive the proceeds from said drafts or any portion thereof as the result of the failure of a bank specified by respondent to transmit same within such reasonable time, then this action against the respondent can be maintained under the Mill Rule for the recovery thereof. There was evidence of such loss adduced at the trial, and the order of nonsuit on the theory that plaintiff had not produced evidence of a loss was erroneous.

The first question raises the issue of the agency of W. H. Wilson, Inc., it being the contention of McGee, Dean that Wilson was the agent of Poe in the matter of the purchase of the cotton, and also in the matter of the routing of the drafts, which issue is raised under the second question. It is the contention of Poe that Wilson was only a broker, and that it did not specify the bank through which the drafts were drawn. These are both issues of fact, one or both of which should be determined by a jury on a retrial of the case, and we shall not therefore discuss the facts relating to these issues, since the case must be remanded for further proceedings.

We have given careful consideration to all of the questions raised, and in view of the above holdings a new trial must be ordered, and the judgment of the lower Court is therefore reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE STABLER, MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concur.