**HEIL–QUAKER, Plaintiff,**

v.

**James T. SWINDLER, d/b/a National Wholesale Heating Co., and Frances B. (Mrs. James T. Swindler) Swindler, Defendants.**

**Civ. A. No. AC–1722.**

United States District Court
D. South Carolina,
Columbia Division.
June 17, 1966.

J. Wesley Drawdy, Columbia, S. C., for plaintiff.

Melton Kligman, Columbia, S. C., for defendants.

## ORDER

SIMONS, District Judge.

This is a diversity action on an open account for the purchase price of certain heating and air conditioning equipment sold to defendant James T. Swindler, doing business as National Wholesale Heating Company, between March 16, and August 28, 1964. Plaintiff's complaint alleges that a current balance of $12,925.91 is due and that defendant Frances B. Swindler on March 11, 1964 agreed in writing to guarantee debts of defendant James T. Swindler, d/b/a National Wholesale Heating Company, in amounts up to $20,000.00. In their amended answer defendants[1] allege that on August 3, 1964 a credit memorandum of $651.75 was issued by agents of plaintiff corporation, and that a subsequent credit memorandum was issued for $6,389.25 by plaintiff's agent evidencing return of equipment purchased for which defendants never received credit. They further allege that $1,048.50 worth of equipment was defective and that defendants now offer to return these units for credit and as offset against any indebtedness that they owe. They further allege that on another occasion one of the agents of plaintiff obtained one of the furnaces charged to defendant and installed it in a residence in which defendant had no interest, and that plaintiff's agents on other occasions did pick up from defendant's warehouse other merchandise and units for which defendant should be credited in the amount of approximately $1,000.00, for which credit memorandums have never been issued. Defendant additionally counterclaims for special damages for defective units purchased from plaintiff and damages arising from their installation. Defendant additionally claimed storage fees and administrative costs in the sum of $1,000.00 against plaintiff. In his total amount of set-offs, credits and counterclaims, defendant demands judgment against plaintiff in the sum of $2,810.05 in excess of the amount alleged to be due by defendant to plaintiff in the latter's complaint. Plaintiff's reply denies the agency alleged by defendant. Issues were joined and this matter came on for trial before this court sitting without a jury.

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff is a corporation organized and existing under and by virtue of the laws of the State of Delaware with its principal place of business in Marshall County, Tennessee.

2. Defendant James T. Swindler, d/b/a National Wholesale Heating Company and defendant Frances B. (Mrs. James T. Swindler) Swindler are citizens and residents of the State of South Carolina.

3. Plaintiff sold to defendant certain merchandise consisting of household furnaces and air conditioning units, together with parts for maintenance and repair of said equipment between March 16, 1964 and August 15, 1964.

4. These goods purchased by defendant from plaintiff were charged on account upon which there remains an unpaid balance of $12,925.91, in the absence of any credits and setoffs to which defendant may be entitled.

5. In order to induce plaintiff to make such sales on open account to defendant James T. Swindler, both defendants sign-

[1] When the term "defendant" is used hereinafter, the court is referring only to James T. Swindler, d/b/a National Wholesale Heating Co.

ed personal unconditional guarantees in writing agreeing to pay the purchase price of said goods, if defendant James T. Swindler d/b/a National Wholesale Heating Company failed to pay up to a maximum of $20,000.00. Induced by these promises, plaintiff sold goods to defendant.

6. Defendant failed to pay, and plaintiff made demand for payment to defendants under the personal guarantee. No payment was forthcoming and plaintiff instituted this action.

7. Plaintiff employed one B. W. Kirby, a manufacturer's representative, to represent it in South Carolina, and said B. W. Kirby and his son, Graham W. Kirby held themselves out as agents of plaintiff in transactions with James T. Swindler doing business as National Wholesale Heating Company. Although Kirby represented other companies, plaintiff held Kirby out as its district manager. In this capacity Kirby had obtained from defendants the personal guarantee, as well as a financial statement from defendant James B. Swindler, prior to any sales and deliveries being made by plaintiff to said defendant.

8. Under instruction of plaintiff, merchandise returned by defendant to plaintiff for which the latter has acknowledged credit is reflected in the claimed balance due of $12,925.91, and had been checked out of defendant's warehouse by Kirby who personally made arrangements with defendant for the return of such merchandise. Although there is a factual dispute as to how much returned merchandise Kirby actually received from defendants on behalf of plaintiff, the court finds that Kirby and his son received from defendants such returned merchandise of a total value of $7,041.50. (Defendant's ex. A.)

9. B. W. Kirby was also plaintiff's representative in South Carolina to check on its behalf any defective units, or complaints made by any purchaser of such units. B. W. Kirby had customarily performed this service for the plaintiff in the past.

10. It was admitted at trial that plaintiff had instructed B. W. Kirby to pick up a heating unit from defendant and redeliver it to a firm in Charlotte, North Carolina, for which credit in the amount of $193.50 has never been given by plaintiff to defendant.

11. Merchandise returned to plaintiff which was reflected by a credit memorandum in writing (Defendant's ex. C) issued by Graham Kirby as agent for the plaintiff company on August 3, 1964 in the sum of $651.75 was credited to defendant and is reflected in the claimed balance of $12,925.91.

12. On or before January 4, 1965, the parties by means of telephone conversations and exchange of letters between defendant's attorney and plaintiff's representative agreed that defendant would be liable for a ten percent restocking charge, returned freight charges, and repair costs, if any, for the return of any equipment which he purchased from plaintiff. Some of the returned merchandise was accepted by plaintiff on this basis, and some of the merchandise was accepted by plaintiff at full value, that is, the purchase price.

13. Some time between January 4, 1965 and February 18, 1965, exact date not determinable, plaintiff's agent B. W. Kirby issued to defendant a credit memorandum while acting within the implied and/or apparent scope of his authority from plaintiff for equipment received by plaintiff or by B. W. Kirby or Grady Kirby in its behalf, in the total sum of $7,041.50; and the court finds that defendants are entitled to a total credit in such amount, which includes the $193.50 credit to which defendant is entitled as set forth in paragraph 10 above.

14. Against this sum of $7,041.50 plaintiff has already given defendant benefit of the following credits in arriving at its net balance of $12,925.91 claimed to be due it by defendants, to wit:

a. $3,009.29 which represents the figure of $3,622.75 as shown upon plaintiff's credit memorandum issued to defendant under date of March 17, 1965 (Def.'s ex. B), less the agreed ten

percent restocking charge of $362.28, labor and parts cost of $56.78, and returned freight charges of $194.40.

b. $651.75 for the return of equipment listed in credit memo dated August 3, 1964 (Def.'s ex. C), picked up from defendant by Graham W. Kirby, son of plaintiff's agent B. W. Kirby.

Thus, against his entitlement of $7,041.50 in credits defendant has already received proper credit for a total of $3,661.04, leaving a credit balance of $3,380.46 to which he is entitled. As to the equipment of the value of $3,622.75 which has been admitted by plaintiff to have been returned to it by defendant, under the arrangement set forth in paragraph 12 above plaintiff is entitled to a ten percent restocking charge of $362.28, plus $194.40 returned freight charges, plus $56.78 for labor and parts to repair the returned equipment, for a total of $613.46 which amount should also be charged against the remaining gross credit to which defendant is entitled, that is, from the figure of $3,380.46, leaving a net credit of $2,767.00. Defendant is entitled to deduct this latter sum from the sum of $12,925.91 representing the balance plaintiff claims it is owed by defendant, leaving a net balance of $10,158.91 owed by defendant to plaintiff on said account.

15. Defendant's evidence and testimony as to certain defective units sold by plaintiff to him, and as to any damages resulting therefrom, are utterly lacking in any probative value. Defendant kept nor produced any adequate records to support such claims. His testimony relative thereto was so general and indefinite that this court is unable to accord it any substantial weight.

16. At no time prior to the bringing of this action did defendant give plaintiff any notice that the equipment purchase by him from plaintiff was defective and unacceptable, as is required by South Carolina law under the circumstances of this case.

## CONCLUSIONS OF LAW

The court has jurisdiction of the parties and the subject matter of the action. The transactions involved were consummated in South Carolina, and the law of this state will govern the issues herein.

■ Defendant Frances B. Swindler at one point in the course of these proceedings seriously contested the liability on her guaranty to plaintiff of the account of James T. Swindler doing business as the National Wholesale Heating Company in that there was insufficient consideration for her promise. Whatever her position now, it is the conclusion of the court that the sale of the goods to defendant James T. Swindler by plaintiff was a sufficient consideration to support a promise by his wife Frances B. Swindler to guarantee his debt and she may be sued on such guaranty without the creditor first exhausting its remedies against the debtor. See Restatement, Contracts § 75(2) Illustration No. 5 (1932); 38 C.J.S. Guaranty § 26 (1943); Thomas v. Croft, 2 Rich. 113 (S.C.1845); McGee v. F. W. Poe Mfg. Co., 176 S.C. 288, 180 S.E. 48, 90 A.L.R. 1468 (1935).

■■ The *sine qua non* of defendants' claims for credits and setoffs is the agency of B. W. Kirby and the scope of Kirby's authority in accepting the return of merchandise in the amount of $7,051.00. Plaintiff contends that Kirby was a mere middleman, a manufacturer's representative, or a salesman vested with only limited authority, and it further contends that Kirby never received all the merchandise as contended by defendants. Defendants on the other hand contend that Kirby's agency was sufficiently established by implied authority, so that plaintiff is bound by his acts and dealings with defendant. "Implied authority is actual authority circumstantially proved, or evidenced by conduct, differing therein from apparent authority which * * * rests upon considerations wholly independent of the authority in fact conferred; it is au-

thority which the principal intended that the agent should have." 2 C.J.S. Agency § 99 pp. 1227–1228 (1936). In Mortgage & Accept. Corp. v. Stewart, 142 S.C. 375, 140 S.E. 804 (1927), the court made no attempt to distinguish apparent authority or agency by estoppel[2] from implied authority, and quoted with approval from 2 C.J.S. 461:

> Sec. 71. (b) *General Rule.* The same acts and conduct on the part of a principal that, when so intended, work an implied appointment often estops the principal to deny an appointment when no actual agency was intended. Accordingly, it is a general rule that, when a principal by any such acts or conduct has knowingly caused or permitted another to appear to be his agent, either generally or for a particular purpose, he will be estopped to deny such agency to the injury of the third persons who have in good faith and in the exercise of reasonable prudence dealt with the agent on the faith of such appearances, although no consideration moved to the alleged principal, and, although there was no actual fraud on the part of such principal, as the estoppel may be allowed on the ground of negligent fault on his part, on the principle that where one of two innocent persons must suffer loss, the loss will fall on him whose conduct brought about the situation.

In Stewart, supra, plaintiff finance company entrusted an automobile dealer with the collection of its payments on a chattel mortgage, received payments through the dealer and then attempted to deny the dealer's agency. The court held that the finance company which had received the benefits of the agency by retaining to itself the monies collected for its account by the motor company could not "retain these benefits and deny the very consequences of the agency." A corollary situation is present in this case. Although plaintiff has attempted to disclaim any of the acts performed by Kirby in its behalf, it not only vested him with authority beyond that of a mere salesman, but also allowed Kirby to act for the company in past and similar transactions. To plaintiff, Kirby was "our Mr. B. W. Kirby" and "District Manager". It is difficult to conclude that Kirby possessed other than actual authority to accept the return of the merchandise from defendants in the amount of $7,051.00; yet under the circumstances present here he also undoubtedly had "apparent" authority to act on behalf of plaintiff in this regard, since defendant relied in good faith upon such circumstances created by plaintiff. Undoubtedly the facts of this case, and primarily the holding out of Kirby by plaintiff, would support either theory—implied authority or apparent authority—depending upon the actual authority conferred from all the facts and circumstances then existing. Such a final distinction is unnecessary since the agency can be established in either fashion. See 2 C.J.S. Agency § 23d, p. 1048 (1936).

In regard to the alleged defective merchandise, it is also to be noted that South Carolina first places a duty upon the buyer to inspect merchandise after he has had a reasonable opportunity to do so and to give the seller notice of such defects within a reasonable time after receipt of the goods. If the buyer fails to inspect and notify, he thereby waives any objection to the quality of the goods. Southern Coal Co. v. Rice, 122 S.C. 484, 115 S.E. 815 (1923); Griggs-Paxton Shoe Co. v. A. Friedheim & Bro., 133 S.C. 458, 131 S.E. 620 (1926).

The remaining claims and defenses asserted by defendants in their amended answer and counterclaim, which have not been hereinabove specifically considered, are denied upon ground that the evidence adduced as to them was either too speculative or was of insufficient probative value to be credible.

---

2. The Restatement of Agency 2d (1958) would preserve a distinction between apparent authority and agency by estoppel. See § 8(d).

Based upon its findings and conclusions, the court determines that defendants are entitled to an additional net credit of $2,767.00 against plaintiff's account of $12,925.91, leaving a net balance due by defendants to plaintiff of $10,158.91, and that plaintiff should be awarded judgment against defendants James T. Swindler d/b/a National Wholesale Heating Company and Frances B. (Mrs. James T. Swindler) Swindler in said amount, together with the costs of this action.

And it is so ordered.

Let judgment be entered accordingly.