In re SOUTHCO, INC., Debtor.

Robert F. ANDERSON, Trustee, Plaintiff,

v.

TRUST COMPANY BANK OF NORTHEAST GEORGIA, Defendant, Third Party Plaintiff,

v.

Robert L. PRUITT, Third Party Defendant.

Bankruptcy No. 91–5576.
Adv. No. 92–8455.

United States Bankruptcy Court, D. South Carolina.

March 11, 1994.

Showell Blades, Payne, Blades & Wellborn, Rock Hill, SC, for defendant/third party plaintiff.

Robert E. Stepp, Glenn, Irvin, Murphy, Gray & Stepp, Columbia, SC, for third party defendant.

## ORDER

WM. THURMOND BISHOP, Bankruptcy Judge.

This matter is before the Court to resolve the dispute between the Third Party Plaintiff (herein "the Bank") and the Third Party Defendant (herein "Pruitt"). The matter between the Plaintiff and the Defendant/Third Party Plaintiff has been resolved by Order filed on January 14, 1994.

On December 16, 1992 the Trustee filed suit to recover the payments from the Bank as unauthorized post-petition payments pursuant to 11 U.S.C. § 549. The Bank answered and filed a third party complaint against Pruitt based on the Guaranty to recover any sums it has to pay the Trustee and its costs and attorney's fees. Pruitt denied liability on the grounds that:

(1) the debt was discharged by payment, thus he was released from any liability under the Guaranty; and

(2) the collateral that the Bank had held was released following the December 13, 1991 payment and the Chapter 7 Trustee sold it, thus Pruitt's right to the collateral

was impaired and he should be released from all liability to the Bank.

## FINDINGS OF FACT

1. The Parties stipulated to the following:

a. The Debtor executed a valid note (herein "the Note") on April 27, 1987 and renewed it on April 4, 1988;

b. In order to induce the extension of credit to the Debtor, the Bank required that Pruitt execute a valid personal guaranty (herein "the Guaranty") guaranteeing payment of $150,000 of debt of the Debtor. It was executed by Pruitt on April 27, 1987; and

c. The Bank never cancelled the Note and Guaranty or executed any other written document releasing Pruitt from liability for any loss it might suffer in connection with the above-referenced loans.

2. Pruitt was the president of the Debtor; executed the Note on behalf of the Debtor; was aware of the actions relating to payoff of the subject loan and release of collateral by the Bank; and knew or should have been aware of the terms of the Note and Guaranty.

3. The Guaranty's terms clearly and unequivocally state that: (a) it is a primary, continuing, absolute, and unconditional guaranty of payment; (b) there are express procedures which must be followed in order to cancel it; (c) Pruitt shall be liable even if the debt is paid off if the debt is later revived by bankruptcy or other means; (d) Pruitt shall pay the Bank's costs of collecting the debt pursuant to the Guaranty and the Bank's attorney's fees equivalent to 15% of the outstanding balance; and (e) the Bank had no duty to safeguard the collateral or proceed against the collateral.

4. Post-petition payments in the amounts of $3297.81, $3297.81 and $28,314.83 were made to the Bank by the Debtor on November 27, 1991, December 4, 1991 and December 13, 1991, respectively. These payments paid out the balance owed at that time under the above-referenced notes.

5. The Bank has suffered a loss of the $15,000 that it is paying to the Trustee to settle the main action brought by the Trustee

to recover the unauthorized post-petition payments. Furthermore, it has had to expend attorney's fees and costs in defending this Complaint and bringing the Third Party action.

6. There is no evidence that Pruitt, in his capacity as Guarantor and as an officer of the Debtor, ever objected to any action taken by the Bank except in his answer to this action.

7. The Debtor filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code on October 3, 1991 and the case was converted to one under Chapter 7 on February 12, 1992.

## ISSUES

1. Did the payment of the above-referenced sums by the Debtor to the Bank release Pruitt from all liability to the Bank if those payments are later deemed voidable post-petition transfers and recovered by the Trustee?

2. Should the release of the collateral held by the Bank upon the payment of the above-referenced sums cause Pruitt to not be found liable to the Bank if those payments are later deemed voidable post-petition transfers and recovered by the Trustee?

3. Is Pruitt liable to the Bank for the Bank's costs and attorneys fees in prosecuting this matter?

## LEGAL DISCUSSION AND CONCLUSIONS

### Payment of Obligation as Release of Liability

(Issue 1)

■ The Bank seeks to recover what it claims to have lost as a result of having to disgorge a portion of the post-petition payment. Pruitt defended saying that because the Bank was paid he should be released from all liability to the Bank, even though the Bank suffered a loss on the loan. However, there remains in the Bank's possession an uncancelled note and guaranty. Pruitt has claimed that their cancellation was a mere ministerial act which only remained to be done.

However, the Guaranty's terms are unequivocal and state that it is a continuing guaranty and that there are specific means by which it might be cancelled. Furthermore, the payment should not be considered payment in full, as it was voidable for two years.

■ The language employed (in the guaranty) is to have a reasonable interpretation, according to the intention of the parties as disclosed by the instrument, read in the light of the surrounding circumstances and the purpose for which it was made, *McGee v. F.W. Poe Mfg. Co.,* 176 S.C. 288, 180 S.E. 48 (1935).

■ The Court considers that the Guaranty is a contract and the rules regarding the interpretation of contracts apply. When a contract is perfectly plain and capable of legal construction, the language of the contract determines the full force and effect of the instrument, *Chan v. Thompson,* 302 S.C. 285, 395 S.E.2d 731 (App.1990), *C.A.N. Enterprises, Inc. v. S.C. Health and Human Services Finance Commission,* 296 S.C. 373, 373 S.E.2d 584 (1988).

■ Terms in an unambiguous contract are to be given their plain, ordinary, and popular meaning, *United Dominion Realty v. Wal–Mart Stores,* 307 S.C. 102, 413 S.E.2d (App.1992).

■ A continuing guaranty, whereby the guarantor binds himself for the payment of such debts as the party named in the instrument may incur from time to time, continues in force until it is revoked. The guarantor, under a continuing guaranty, is not released from his liability by the fact that the debt contracted on the faith of the guaranty was discharged and revived during the term of the guaranty, *Hibernia Bank & Trust Co. v. Succession of Cancienne,* 140 La. 969, 74 So. 267 (1917).

The Court had the original Guaranty before it and it contains the following language regarding the scope of Pruitt's liability:

"... the Undersigned ... unconditionally and irrevocably ... guarantee(s) to the Bank, ... the full and prompt payment of all present, future liabilities of the Principal to the Bank irrespective of its nature or the time it arises."

"The obligation of the Undersigned to the Bank hereunder is primary, absolute and unconditional ..."

"The Undersigned expressly agree that the Undersigned's obligation hereunder shall remain absolute, primary and unconditional ...

The language in the Guaranty is clear and unequivocal. There is no evidence that Pruitt was incapable of understanding the meaning of the words. By its own terms it was a continuing guaranty and was to have survived the full payment of the Note.

Also, the Guaranty has express terms providing for its cancellation, and those expressed actions have not been taken, as it has been stipulated that none of the required actions listed in the following paragraphs have been done.

"The Undersigned ... agree that ... this agreement is a continuing Guaranty and shall remain in force at all times hereafter, whether there are any liabilities outstanding or not, until all originals hereof are returned to the Undersigned by the Bank or until written notice from the Undersigned terminating this Guaranty has been received and acknowledged by the Bank ... but such termination shall not release the Undersigned from liability for payment of ... (iii) any damages, losses, costs, interest, charges, attorney's fees or expenses then or thereafter incurred in connection with said liabilities or any renewals or extensions thereof."

"No act, failure to act, or omission of any kind on the part of the Undersigned, the Principal, the Bank or any other person shall be a legal or equitable discharge or release of the Undersigned from their obligation hereunder unless agreed to hereafter in writing by the Bank."

As shown by the language in the Guaranty, that the loan was paid off is irrelevant, as the Parties contemplated this situation:

"The Undersigned further agree that this instrument shall continue to be effective or be reinstated as the case may be, if at any time payment, or any part thereof,

of the principal of or interest on any of the liabilities is rescinded or must otherwise be restored or returned by the Bank upon the insolvency, bankruptcy or reorganization of the Principal, or otherwise, all as though such payment has not been made."

As shown below, by operation of law the debt was voidable for two years:

11 U.S.C. § 550 states that the trustee can recover assets from the initial transferee to whom assets are transferred by a debtor when the transfer is avoided under 11 U.S.C. § 549. 11 U.S.C. § 549 states that a trustee may avoid a transfer of property of the estate that occurs after the commencement of the case and that is not authorized by the court or Title 11. Finally, 11 U.S.C. § 549(d) states that an action to avoid a transfer pursuant to that section cannot be commenced after the earlier of: (1) 2 years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed.

■ Thus, under the Bankruptcy Code, even if this Court were to ignore the language of the Guaranty and find that full payment released Pruitt, under these facts the payment in question could not reasonably be said to release Pruitt from all liability to the Bank until the Bank was not subject to suffering a loss. That date was for at least two years following the date it was paid.

Based on the above, the Court finds that the language of the Guaranty should be strictly construed and that it represents the intentions of the parties. The Court finds that the full payment of the loan to the Bank did not release Pruitt from liability to the Bank.

### Release of Collateral
(Issue 2)

■ Pruitt also claims that he is not liable to the Bank because he has lost the unimpaired right to resort to the Bank's collateral. The Parties contemplated this situation when the Guaranty was executed, as evidenced by the following language contained therein.

"The Undersigned hereby consent and agree that the Bank may at any time, either with or without consideration, surrender, release or receive any property or other security of any kind or nature whatsoever held by it or any person on its behalf or for its account securing any indebtedness of the Principal or any liability, or substitute any collateral so held by the Bank for other collateral of like kind, or of any kind, without notice to or further consent from the Undersigned, and such surrender, receipt, release or substitution shall not in any way affect the obligation of the Undersigned hereunder. The Bank shall have full authority to adjust, compromise and receive less than the amount due upon any such collateral, and may enter into any accord and satisfaction agreement with respect to the same as may seem advisable to the Bank without affecting the obligation of the Undersigned hereunder, which shall remain absolute, primary and unconditional. The Bank shall be under no duty to undertake to collect upon such collateral or any part thereof, and shall not be liable for any negligence or mistake in judgement in handling, disposing of, obtaining, or failing to collect upon, or perfecting a security interest in, any such collateral."

In light of the above-stated law regarding the interpretation of contractual language and of the following, clearly, the Bank has no duty with regard to the collateral as per the contract or under the law.

■ A guarantor, under an absolute guarantee, cannot defend on the ground that a creditor, through negligence or lack of due diligence, lost or dissipated the collateral furnished by the debtor, *A & T Motors, Inc. v. Roemelmeyer*, 158 So.2d 567 (Fla.App.1963); *Barnes v. Klebe Tool & Die Co.*, 5 Wis.2d 392, 92 N.W.2d 868 (1958). A lender who is given a guarantee of payment does not have a duty to safeguard collateral, *First Federal Savings & Loan Association of South Carolina v. Clyde M. Dangerfield, Jr.*, 414 S.E.2d 590 (App.1992). Under an absolute and unconditional contract of guaranty, it is no defense that creditor has lost security or has been negligent in regard to protection of collateral, *Dunser v. Southeast First Nation-*

*al Bank of Miami,* 367 So.2d 1094 (Fla.App. 1979).

■ Pruitt may, by analogy, argue that when the Bank accepted the funds from the Debtor and released the collateral this was a rescission of the loan agreement, and the Bank surrendered valuable rights he had when it released the collateral. Thus, he should be released from any liability under the Guaranty.

■ However, one cannot analogize the post-petition transaction to a rescission. In the absence of fraud which would justify shifting loss to party who opposes rescission, rescission is appropriate only if both parties can be returned to status quo prior to (the) contract, *King v. Oxford,* 282 S.C. 307, 318 S.E.2d 125 (App.1984). It is impossible to return the Bank to status quo because, even though it has its funds, the funds may be recovered by a trustee.

Given these facts it is difficult to imagine a scenario in which the original loan transaction could have been rescinded and in which the parties really could be restored to the status quo and in which the Bank would not be subjected to some element of risk. As such, the Court should lay the risk at the feet of the party who by contract assumed the risk, Pruitt.

■ Also, Pruitt consented to the release of the collateral. He never objected to the release of the Bank's UCC's until this action was brought. He was the president of the Debtor at the time the payments to the Bank were made and the UCC's were cancelled. He was in a position to protect himself by refusing to pay the funds without receiving properly cancelled guaranties.

■ Where a guarantor consents to discharge of the security, he is not released, 38 Am.Jur.2d "Guaranty" 84. In other jurisdictions Courts have gone so far as to state that parties who were injured by a lender's fraud and who acted both as the maker's representative and the guarantor were estopped from claiming that they were not liable under the guaranty.

By silence at time of renewal of the corporate obligations, guarantors were estopped as a matter of law from asserting defenses against guaranties of promissory note where guarantors who signed ... note on behalf of corporation were same individuals who signed guaranty agreements, at time of signing guarantors had knowledge of alleged fraudulent acts of lender prior to execution of renewal note and all guaranties provided that they were continuing until discontinued in writing and that they applied to all renewals of underlying obligations, *Citizens & Southern National Bank, et al. v. Yeager Enterprises, et al.,* 247 Ga. 797, 279 S.E.2d 674 (1981). Acquiescing to the fraud of a lender is certainly no less serious an act than acquiescing to the release of collateral and those Courts have not sympathized with the guarantor.

■ While the loss of the right to proceed against the collateral may seem unfair, Pruitt contracted away that right and consented to the release of the collateral. The rights of the parties to a contract must be measured by the contract, regardless of its wisdom, reasonableness, or failure of parties to guard their rights carefully, *Chan v. Thompson,* supra. That he could remain liable to the Bank after the release of the collateral and the payment of the Note is irrelevant. The contract of guaranty is a separate undertaking and if the terms and conditions of the contract so state, a guarantor may assume a greater liability than that of the principal, *Hyster Credit Corp. v. O'Neill,* 582 F.Supp. 414 (D.C.Pa.1983).

■ Finally, the Court takes note of the following maxim: Equity will not suffer a wrong without a remedy, 12 S.C. Juris. EQUITY, Section 8. The Bank merely accepted a voidable payment on its loan. The only protection it had available was not to release Pruitt and cancel the Note. The Bank has had to disgorge $15,000 of the payment and will have no remedy unless it is able to enforce the terms of the Guaranty.

Pruitt was in the best position to protect himself from allowing the collateral to be released. For the Bank to suffer the loss and not be able to proceed against a guarantor who was involved with the subject transactions at every level would be inequitable.

**102**

For this reason the Court invokes its equitable powers and those granted pursuant to 11 U.S.C. § 105 in order to give the Bank a remedy.

Based on the above reasoning, the Court finds that Pruitt cannot defend the Bank's action on the grounds that the collateral has been released, in that the Bank had no duty to Pruitt to safeguard the collateral.

### Attorney's Fees
#### (Issue 3)

■ The Guaranty has the following language which is plain, clear and easily interpreted:

> "If any legal action or actions are instituted by the Bank to enforce any of its rights ... then the Undersigned ... agree to pay ... all expenses incurred by Bank ... including ... court costs plus 15% of the total amount of principal and accrued interest then due the Bank hereunder as attorney's fees."

■ If attorneys' fees and costs are provided for in a guaranty, then the guarantor is liable for the payment of them, *EAC Credit Corporation v. Wilson*, 281 N.C. 140, 187 S.E.2d 752 (1972). In the instant case, both the Debtors's Note and Pruitt's Guaranty provide for attorneys fees and costs. As such, the Court finds that the Bank should recover all expenses incurred in prosecuting this action, including costs and attorney's fees equivalent to 15% of the total loss to the Bank.

### ORDER

For the reasons cited above, it is hereby ORDERED that the relief sought be, and hereby is, granted, and Pruitt is hereby liable to the Bank for $15,000.00, plus the Bank's costs and attorney's fees expended in prosecuting this Third Party Complaint.