1256

PPG INDUSTRIES, INC., Respondent v. ORANGEBURG PAINT & DECO-RATING CENTER, INC., Frank Weaver and J. Leonard Sanford, Defendants, of whom J. Leonard Sanford is Appellant. Appeal of J. Leonard SANFORD.

(375 S. E. (2d) 331)

Court of Appeals

---

*Robert R. Horger* and *Robert F. McCurry, Jr.*, of *Horger, Barnwell & Reid*, Orangeburg, *for appellant.*

*Robert F. McMahan, Jr.* of *Glenn, Irvin, Murphy, Gray & Stepp*, Columbia, *for respondent.*

Heard Oct. 10, 1988.

Decided Nov. 28, 1988.

GARDNER, Judge:

PPG Industries, Inc., (PPG) alleged in its complaint in this action that J. Leonard Sanford (Sanford) signed a guaranty agreement in which he guaranteed extensions of credit to defendant Orangeburg Paint & Decorating Center, Inc. (the store). The trial court initially denied PPG's motion for summary judgment against Sanford. On motion to reconsider, the appealed order granted summary judgment against Sanford. We affirm.

## ISSUES

The issues on appeal are (1) whether the trial court erroneously granted summary judgment because there was a question of fact as to Sanford's defense of fraud in the inducement or procurement of the guaranty agreement, (2) whether the trial court erred in failing to hold that summary judgment could not be granted where there is evidence that PPG did not notify Sanford of continued extensions of credit beyond the first shipment of goods to the store, and (3) whether the trial judge erred in granting the motion to reconsider his first order denying summary judgment to PPG.

## FACTS

Frank Weaver is married to Sanford's niece. Weaver sought Sanford's help in establishing a paint store. Sanford incorporated the Orangeburg Paint & Decorating Center, Inc., but Weaver has owned all of the stock since 1982 and has been in complete control and charge of the store since its opening.

When the store first opened in 1979, Sanford signed a guaranty of extensions of credit by PPG, a supplier. The guaranty covers all products "which have been or may be sold and/or delivered by PPG" to the store. Sanford admits that he did not read the agreement before signing it.

In addition, in the guaranty agreement there is a box filled in with an "X" to indicate the guaranty extends to all sales and deliveries of products. This is in contrast to a blank box that if marked would indicate a maximum amount for the guaranty. Sanford's deposition testimony is that neither of these boxes was filled in when he signed the form. In addition, Sanford offers affidavits and testimony to the effect that PPG's representatives represented to him before he signed the guaranty agreement that it covered only the initial purchase of goods.

## I.

Rule 56(c) S. C. R. Civ. P. states that summary judgment must be granted if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *See also Gilmore v. Ivey*, 290 S. C. 53, 348 S. E. (2d)

180 (Ct. App. 1986). In addition, it must be shown that further inquiry into the facts is not needed to clarify the applicable law. *Folkens v. Hunt*, 290 S. C. 194, 348 S. E. (2d) 839 (Ct. App. 1986). On motion for summary judgment, the court must construe all ambiguities, conclusions and inferences arising in and from the evidence most strongly against the moving party. *Tom Jenkins Realty, Inc. v. Hilton*, 278 S. C. 624, 300 S. E. (2d) 594 (1983).

In the case before us, there are two facts in dispute. The first of these disputed facts concerns whether PPG's agent told Sanford that the guaranty only applied to the initial order placed by the store with PPG. It is also Sanford's deposition testimony that the "X" mark on the guaranty was not there at the time he signed it although he admits he did not read it then.

The initial question is whether the above two disputed facts are material facts. In determining what constitutes a general issue as to any material fact for purposes of summary judgment, an issue is "material" if the facts alleged are such as to constitute a legal defense or are of such a nature as to affect the result of the action. *Austin v. Wilder*, 26 N. C. App. 229, 215 S. E. (2d) 794 (1975).

Sanford first argues that the alleged representation by PPG's agent that the guaranty only applied to the initial order placed by the store constitutes fraud in the inducement of the contract. If the alleged representations do constitute fraud in the inducement of the contract, summary judgment was inappropriate because material facts are in dispute.

Sanford argues that he relied on the statement and that his resulting execution of the guaranty unquestionably allows his defense of fraud in the inducement to be determined by the jury. In support of this argument, he quotes from the case of *Darby v. Waterboggan of Myrtle Beach, Inc.*, 288 S. C. 579, 584, 344 S. E. (2d) 153, 155 (Ct. App. 1986), the following language:

> In order to establish a claim or defense of fraud in the inducement, a party must prove, among other elements of the tort: (1) that the alleged fraudfeasor made a false representation relating to a present or preexisting fact; (2) that the alleged fraudfeasor intended to deceive him;

and (3) that he had a right to rely on the representation made to him.

Sanford then argues that the facts of this case fit the three enumerated factors set forth in *Darby*. The fallacy of Sanford's argument is that he fails to take into consideration the words "among other elements of the tort" included in the above quote. The nine elements of fraud are set forth in the case of *Outlaw v. Calhoun Life Insurance Co.*, 236 S. C. 272, 113 S. E. (2d) 817 (1960); included in the elements to be proved is that the one asserting the fraud must prove, among other elements, (1) his ignorance of the falsity of the representation, (2) his reliance on its truth and (3) his right to rely thereon.

It is largely because the law of fraud requires Sanford to prove his ignorance of the falsity of the representation and his right to rely on the falsity that the courts long ago established the rule that ordinarily one cannot complain of fraud in the misrepresentation of the contents of a written instrument signed by him when the truth could have been ascertained by reading the instrument, and that one entering into a written contract must read it and avail himself of every reasonable opportunity to understand its content and meaning. *See Parnell v. United American Insurance Co.*, 246 S. C. 26, 142 S. E. (2d) 204 (1965). *Parnell* goes on to note that this rule is inapplicable if the person asserting the fraud is ignorant, unwary and unable to read. Sanford is a successful businessman and by no means can be excused from reading the contract which he signed. Since Sanford admits that he did not read the contract, we hold perforce of *Parnell* that his defense of fraud in the procurement is untenable because the contract provided that the guarantor:

> [D]oes hereby unconditionally guarantee to PPG, its successors and assigns, the payment at maturity of the price and value of all products which have been or may be sold and/or delivered by PPG to CUSTOMER and all other charges due PPG from CUSTOMER in accordance with the terms of sale or other contract.

Sanford's next argument relates to a section of the

■ guarantee agreement; the following is an excerpt of that section:

This Guarantee shall be a continuing Guarantee of all amounts due to PPG from CUSTOMER, whether such indebtedness now exists or is incurred hereafter, and in whatever form it may be evidenced.

☒ extending to all sales and deliveries of products and charges made by PPG to or for the account of CUS-TOMER; or

☐ extending to all sales and deliveries of products and charges made by PPG to or for the account of CUS-TOMER up to a maximum of _____ Dollars ($ _____ ).

Sanford argues that the "X" was not placed in the first box before he signed it; this despite the fact that he said he did not read the instrument before signing it.

It is, nevertheless, admitted that Sanford did not fill in the blank in the second sentence to limit his guarantee in any way. Since the earlier provision of the guaranty agreement provided that the guarantor guaranteed payment for "all products which have been or may be sold and/or delivered by PPG to CUSTOMER and all other charges due PPG from CUSTOMER," we hold this argument is meritless. Moreover, had Sanford intended to limit his liability he had a duty to do so by putting an "X" mark in the second box. Sanford makes no contention that he checked the second block or that he filled in a limiting amount in the second block on the guaranty agreement. We therefore concur with and adopt the appealed order's holding that:

Although not yet decided in South Carolina, in the absence of an express limitation of an amount of a guaranty

as a general rule the amount of the liability, or, in other words, the measure of damages, on a default by the principal obligor is that amount of loss which the guarantee has sustained by reason of such default ...

38 C. J. S. *Guaranty*, Section 56 (1943). Thus, in this case, since the amount of the Guarantee was not specifi-

cally limited, PPG is entitled to recover the full amount owed from Sanford.

Moreover, the language throughout the Guarantee is clear and unambiguous concerning the scope of the Guarantee.

\* \* \* \* \* \*

Clearly, the Guarantee, on its face, is the Guarantee of all of Orangeburg Paint's debts to PPG which Guarantee could have been limited by filling in a dollar limitation. Thus, regardless of whether the X mark was in the Guarantee when Sanford signed it, the Guarantee is still a general Guarantee because no dollar limitation was ever filled in. Without such a limitation being filled in, the Guarantee is clear and unambiguous and covers all debts due from Orangeburg Paint to PPG.

For the foregoing reasons, we reject this contention of Sanford. And we so hold.

## II.

Sanford next argues that the trial judge erred in failing to hold that summary judgment could not be granted where there is evidence that PPG did not notify Sanford of continued extensions of credit beyond the first shipment of goods to the store. This argument presents a question of law, i.e., whether a guarantee under a written continuing guaranty agreement has an obligation to notify the guarantor of each additional extension of credit to the guarantor's principal.

We quote from 38 Am. Jur. (2d) *Guaranty* Section 99 (1968).

[R]ecent cases have concluded that in a continuing guaranty, notice of the transactions occurring between the debtor and creditor is purely one [sic] of express contract, and—in the absence of a specific provision requiring notice—the creditor has no obligation to advise or to notify the guarantor.

*See also* Restatement (Second) of Contracts Section 31 and Comment b and Section 54 and Comment d (1981).

This seems to be the majority rule in the United States although there is authority to the contrary. *See* 38 C. J. S. *Guaranty* Section 55 (1943) and the minority view cited therein.

We adopt the majority view above set forth as the law of South Carolina. The guaranty of this case does not require notice to Sanford of additional extensions of credit. The guaranty agreement clearly states that it is a continuing guarantee of all amounts due PPG regardless of whether the amounts were incurred after the execution of the agreement. Under these circumstances, we hold that PPG was under no obligation to notify Sanford of the continued extensions of credit it made to Orangeburg Paint & Decorating Center, Inc.

## III.

Lastly, Sanford argues that the trial court erred in reconsidering its initial denial of summary judgment because there is no such motion under the South Carolina practice. We find no merit to this contention. The denial of summary judgment is interlocutory and not immediately appealable. *Gilmore v. Ivey, supra; Bocook Outdoor Media, Inc. v. Summey Outdoor Advertising, Inc.*, 294 S. C. 169, 363 S. E. (2d) 390 (Ct. App. 1987). A trial judge, until final judgment, controls the trial of the case before him, and as a general rule may amend, correct, modify, or otherwise change its findings of fact and conclusions of law before entry of judgment or decree. *See*, cases collected at 18 S. C. Dig., *Trial*, Key No. 18 (West 1952 & Supp. 1988); 89 C. J. S., *Trial*, Sections 638-639 (1955 & Supp. 1988).

The trial judge, under our procedure, is afforded many opportunities to change his mind. For instance, no authority is needed for the proposition that a trial judge, even after judgment, has the right to grant a new trial based upon his reconsideration of a previous motion for directed verdict and of course many other illustrations could be given of a trial judge's right to reconsider decisions he has made during the course of a trial and before final judgment is entered. We have no authority in this state regarding this exact issue; however, it is the rule in our neighboring state of Georgia that it is within the discretion of the trial judge to consider

a renewed motion for summary judgment. *Metropolitan Tractor, Inc. v. Samples Grading Company, Inc.*, 167 Ga. App. 102, 306 S. E. (2d) 68 (1983).

The federal rule is that reconsideration of a motion for summary judgment is a matter for the trial court's discretion. *Warner Brothers, Inc. v. American Broadcasting Co.*, 720 F. (2d) 231 (2d Cir. 1983). *See also* 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice Paragraph 56.14[2] (1988).

For the above reasons, we reject Sanford's contention that the trial judge, under the circumstances of this case, erred by reconsidering the motion for summary judgment.

Sanford also argues that the court violated due process by not giving him an opportunity to be heard on the motion to reconsider summary judgment. Since Sanford has not claimed he was prevented from submitting written materials, we assume that he means that he was given no opportunity for oral argument. Under the circumstances of this case where oral argument was previously allowed, we find no merit to this contention.

Finally, we find no merit in the remaining questions presented by Sanford. And we so hold.

## CONCLUSION

The record before us reflects that Sanford is an experienced and successful businessman. He testified that he did not read the guaranty agreement. The law of his state imposed upon him the duty to read contracts he signed. Having failed to do so, we hold that he cannot now be heard to complain. The contract before us in clear language provides that it is a continuing contract of guaranty and for this reason we have rejected Sanford's arguments that he was entitled to notice of additional extensions of credit. Lastly, the trial judge had control of the case until final judgment. The denial of summary judgment is not final judgment. It was, we hold, within the discretion of the trial judge to reconsider his previous order relating to PPG's motion for summary judgment. For these reasons, we find no merit in

the issues presented by Sanford in this appeal. Accordingly, the appealed order is affirmed.

Affirmed.

SANDERS, C. J., and GOOLSBY, J., concur.