CAROLINA FIRST BANK, Plaintiff v. STARK, INC. and MARCEL STARK, Defendants

No. COA07-833

(Filed 20 May 2008)

**Guaranty— personal guaranty—company name listed incorrectly—collateral—parol evidence rule—creditworthiness exception**

The trial court erred by concluding that defendant individual guarantor was not personally liable for any debt incurred by defendant company owed to plaintiff bank, and the case is reversed and remanded to the trial court for entry of judgment against the guarantor, because: (1) a guarantor may be liable on a personal guaranty even where the guaranty incorrectly lists the wrong company as the borrower, the evidence supported a finding that Stark, Inc. and Stark, Inc. dba Dylan Crews are the same entity, and the trial court's conclusion that the guarantor was not personally liable was not supported by its finding that the guarantees were for debts in the name of Stark, Inc. dba Dylan Crews

since the companies were one and the same entity; (2) acceptance of collateral by the bank or extensions or renewals of credit did not affect defendant individual's liability as a guarantor; (3) the parol evidence rule would not apply since the credit memoranda regarding the 2001 loan were created after the execution of the guaranties; the testimony relating to the 2001 loan would also be considered evidence of agreements or understandings after the execution of the guaranties without violating the parol evidence rule; and even assuming arguendo the parol rule did apply, defendants waived any assignment on this basis when they failed to object to the admission of the testimony and credit memorandum at trial; and (4) in regard to the creditworthiness exception to the guaranties, there was no evidence in the record to support the finding that Stark, Inc. met that standard since the bank did consider the guarantor's assets and income in approving the 2001 loan.

Appeal by plaintiff from judgment entered 8 November 2006 by Judge Marvin K. Gray in Mecklenburg County Superior Court. Heard in the Court of Appeals 5 February 2008.

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Mark P. Henriques and Sarah A. Motley, for plaintiff-appellant.*

*Andresen & Associates, by Kenneth P. Andresen and Julian M. Arronte, for defendants-appellees.*

CALABRIA, Judge.

Carolina First Bank ("plaintiff") appeals the portion of the trial court's judgment concluding that Marcel Stark ("guarantor") is not personally liable for any debt incurred by Stark, Inc. owed to the plaintiff. The judgment also concluded that defendant Stark, Inc. was liable to the plaintiff for $567,007.24. We reverse.

Stark, Inc., a specialty women's clothing manufacturer, was incorporated in South Carolina in 1994. Marcel Stark is the president of Stark, Inc. In 1997, Stark, Inc. and the guarantor (collectively the "defendants") began a banking relationship with Rock Hill Bank and Trust ("RHB&T"). Also in 1997, Stark, Inc. applied for a line of credit. As part of RHB&T's approval process, C. Robert Herron ("Mr. Herron"), the RHB&T senior vice president for consumer commercial lending reviewed Stark, Inc.'s tax returns, balance sheets, and other financial information. Mr. Herron drafted a credit memorandum

CAROLINA FIRST BANK v. STARK, INC.

[190 N.C. App. 561 (2008)]

describing the borrower, the financial review, and the repayment analysis. Since it was RHB&T's standard practice to require individual guarantors to support commercial loans, the credit memorandum dated 14 April 1997 included a "Guarantor Review" with guarantor's 10 December 1996 personal financial statement, showing a net worth of $466,000, and Stark, Inc.'s balance sheet, showing assets totaling $472,000 and liabilities totaling $432,000. Mr. Herron recommended the extension of a line of credit to Stark, Inc. based on "documented primary repayment ability," "documented secondary repayment sources," and the experience and expertise of the guarantor. RHB&T approved a line of credit to Stark, Inc. d/b/a Dylan Crews in the amount of $450,000.

On 24 April 1997, the guarantor personally guaranteed to RHB&T the performance and payment of "any and all debt in the name of Stark, Inc. dba Dylan Crews" ("1997 guaranty") by signing the guaranty. On 1 June 1998, the guarantor again signed a guaranty pledging to pay any and all debt in the name of Stark, Inc. dba Dylan Crews ("1998 guaranty," collectively "the guaranties"). Both guaranties contained the following language, in pertinent part:

> the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): ANY AND ALL DEBT IN THE NAME OF STARK, INC. DBA DYLAN CREWS The term "indebtedness" as used in this guaranty shall not include any obligations entered into between Borrower and Lender after the date hereof (including any extensions, renewals or replacements of such obligations) *for which Borrower meets the Lender's standard of creditworthiness based on Borrower's own assets and income without the addition of a guaranty . . . .*
>
> . . . . .
>
> 2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force

and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender . . . .

. . . .

6. Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender, may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. *The liability of the Undersigned shall not be affected or impaired by any of the following acts or things* (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness . . . .

(emphasis added).

On 1 June 2000, RHB&T approved another extension of a line of credit to Stark, Inc. in the amount of $500,000. The same day, Stark, Inc. signed a promissory note promising to repay $500,000. On 20 June 2000, RHB&T approved changing Stark Inc.'s existing line of credit to a revolving line of credit based in part on a review of the guarantor's assets. On 24 May 2001, Stark, Inc. signed a promissory note for $500,000 to renew the existing line of credit ("the 2001 note"). In March 2002, Stark, Inc. renewed the 2001 note. In late 2002, Stark, Inc. dissolved the corporation and defaulted on the 2001 note.

Plaintiff purchased RHB&T's assets in November 2002 and subsequently filed a complaint alleging, *inter alia*, breach of contract by Stark, Inc. and the guarantor. At a bench trial on 30 October 2006 in Mecklenburg County Superior Court, the Honorable Marvin K. Gray ("Judge Gray") concluded Stark, Inc. breached its obligations under the 2001 note and owed plaintiff $567,007.24, which included interest, late fees, attorneys fees and expenses. However, Judge Gray also concluded the guarantor had no personal liability to plaintiff under the terms of the guaranties for any of the corporate defendant's indebtedness. Plaintiff appealed.

CAROLINA FIRST BANK v. STARK, INC.

[190 N.C. App. 561 (2008)]

Standard of review

According to our standard of review, findings of fact by a trial court are conclusive on appeal if there is competent evidence to support those findings, even if there is evidence that would support findings to the contrary. *Biemann & Rowell, Co. v. Donohoe Cos.*, 147 N.C. App. 239, 242, 556 S.E.2d 1, 4 (2001). Conclusions of law are reviewable *de novo*. *Mann Contr'rs Inc. v. Flair with Goldsmith Consultants-II, Inc.*, 135 N.C. App. 772, 775, 522 S.E.2d 118, 121 (1999).

Judge Gray concluded that the guarantor was not liable for the June 2000, May 2001, and March 2002 notes. The trial court found the boxes were not checked under "related documents" on either the May 2001 note, or the March 2002 renewal note, indicating there was no guaranty related to the documents. Furthermore, the trial court found that the June 2000 note "constituted a new loan to the Corporate Defendant [since the note] did not include the DBA Dylan Crews and was not an extension of any pre-existing loan to Stark, Inc. DBA Dylan Crews."

A personal guaranty is a continuing obligation until it is revoked by the guarantor or terminated by operation of law. *Pee Dee State Bank v. National Fiber Corp.*, 287 S.C. 640, 643, 340 S.E.2d 569, 571 (S.C. Ct. App. 1986). A guaranty is an absolute or unconditional promise to pay a particular debt if it is not paid by the debtor and is immediately enforceable against the guarantor upon the debtor's default. *TranSouth Financial Corp. v. Cochran*, 324 S.C. 290, 295, 478 S.E.2d 63, 66 (S.C. Ct. App. 1996). In order to conclude as a matter of law that Marcel Stark was not personally liable for the debt incurred by Stark, Inc., the trial court must have found one of the following: (I) the guaranty was revoked by the guarantor; (II) the guaranties did not apply to the indebtedness incurred by Stark, Inc., as opposed to indebtedness incurred by Stark, Inc. DBA Dylan Crews; or (III) Stark, Inc. met the standard of creditworthiness exception described in the guaranties.

I. Revocation

The trial court made no findings regarding revocation and the appellees do not raise this issue in their brief. Therefore, we consider whether the guaranties applied to the indebtedness incurred by Stark, Inc. or whether Stark, Inc. met plaintiff's standard of creditworthiness.

CAROLINA FIRST BANK v. STARK, INC.

[190 N.C. App. 561 (2008)]

II. Indebtedness of Stark, Inc.

The trial court found that Stark, Inc.'s liability for the 2001 note was $567,007.24. The parties do not contest that the guaranties were signed in South Carolina or that they are governed by South Carolina law. The plain language of the guaranties determines their terms. *TranSouth Financial Corp.*, 324 S.C. at 294, 478 S.E.2d at 65 ("A guaranty is a contract and should be construed based on the language used by the parties to express their intention.") (citation omitted). The guaranties state they are absolute, continuing obligations and apply to future debt incurred by "Stark, Inc. DBA Dylan Crews." *See Pee Dee State Bank*, 287 S.C. at 643, 340 S.E.2d at 570 (plain language of agreement established that written guaranty was a continuing guaranty and not limited to initial loan). Therefore, the next issue is whether the guaranties apply to Stark, Inc.'s 2001 debt.

A guarantor may be liable on a personal guaranty even where the guaranty incorrectly lists the wrong company as the borrower. *First Fed. Savings & Loan v. Dangerfield*, 307 S.C. 260, 414 S.E.2d 590 (S.C. Ct. App. 1992). In *First Federal*, the guarantor was the spouse of one of the shareholders of A Professional Moving and Storage of Charleston, Inc. ("the Charleston company"). Around the same time the Charleston company was formed, one of the shareholders of the Charleston company started another moving and storage company named "A Professional Moving and Storage, Inc." operating in Greenville, South Carolina. *Id.* at 262, 414 S.E.2d at 592. The plaintiff-bank approved two loans for the Charleston company, listing the borrower as "A Professional Moving and Storage, Inc." *Id.* The personal guaranty signed by the defendant named the obligor as "A Professional Moving and Storage, Inc." *Id.* The plaintiff-bank approved the loan "with the understanding that the Charleston company was the borrower," the funds were disbursed to the Charleston company, and no evidence was presented that the loans were paid to the Greenville company. *Id.* at 264, 414 S.E.2d at 593.

Here, the evidence presented supports a finding that Stark, Inc. and Stark, Inc. DBA Dylan Crews are the same entity. At the time RHB&T disbursed the 2001 loan, Stark, Inc. was engaged in the sale of women's clothing under the name Dylan Crews. The guarantor testified the 1997 guaranty was "specifically for our garment production." The purpose of the March 2002 renewal loan was to fund the Dylan Crews line of clothing. The trial court's conclusion that the guarantor was not personally liable is not supported by the trial court's finding that the guaranties were for debts in the name

of Stark, Inc. DBA Dylan Crews, since Stark, Inc. and Stark, Inc. DBA Dylan Crews were one and the same entity. *See McGee v. F.W. Poe Mfg. Co.*, 176 S.C. 288, 293, 180 S.E. 48, 51 (S.C. 1935) (language of guaranty contract must be reasonably interpreted according to parties' intentions and read in light of surrounding circumstances and purpose thereof); *see also Tri-County Ice and Fuel Co. v. Palmetto Ice Co.*, 303 S.C. 237, 241, 399 S.E.2d 779, 781 (S.C. 1991) (default judgment entered against company's trade name was valid against company).

Defendants argue that the guaranties were unenforceable as to the 2001 note because RHB&T failed to check a box on the form for the promissory note indicating the guaranties secured the 2001 note. We disagree.

In support of their argument, defendants cite *PPG Industries v. Orangeburg Paint & Dec. Cent.*, 297 S.C. 176, 375 S.E.2d 331 (S.C. Ct. App. 1988). In that case, the guarantor failed to check a box on the guaranty which would limit the scope of his guaranty. *Id.* at 181, 375 S.E.2d at 334. We find this case distinguishable. In the instant case, the box at issue was the box on the note, unlike in *PPG* where the box was on the guaranty. The guarantor's liability is "that amount of loss which the guarantee has sustained by reason of such default [by the principal obligor]." *Id.* Since the guaranty applied to any and all indebtedness, the relevant question is whether the notes qualified as "indebtedness" incurred by Stark, Inc. and guaranteed by the guarantor.

Defendants also cite the fact that the bank identified items required as collateral in exchange for the 2001 line of credit in support of their argument that the 2001 debt was not secured by a guaranty. However, this fact is irrelevant. The plain language of the guaranties provides that:

> *The liability of the Undersigned shall not be affected or impaired by any of the following acts or things* (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness . . . .

(emphasis added). Therefore, acceptance of collateral by RHB&T or extensions or renewals of credit do not affect defendant Marcel Stark's liability as a guarantor.

## Parol Evidence Rule

Defendants also argue that consideration of extrinsic evidence, such as credit memoranda, Mr. Herron's testimony, and the guarantor's testimony, violates the parol evidence rule. We disagree.

The parol evidence rule "prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is used to contradict, vary, or explain the written instrument." *Crafton v. Brown*, 346 S.C. 347, 351, 550 S.E.2d 904, 906 (S.C. Ct. App. 2001) (quotation omitted).

The credit memoranda regarding the 2001 loan were created after the execution of the guaranties. Therefore, the parol evidence rule would not apply. Furthermore, the testimony relating to the 2001 loan at issue would also be considered evidence of agreements or understandings after the execution of the guaranties, and would not violate the parol evidence rule. Even assuming *arguendo* the parol evidence rule does apply, defendants waived any argument on this basis when they failed to object to the admission of the testimony and credit memoranda at trial. *Lindsey v. North Carolina Farm Bureau Mut. Ins. Co.*, 103 N.C. App. 432, 436, 405 S.E.2d 803, 805 (1991) ("North Carolina follows the . . . rule holding that, in the absence of an objection to its admission, the trial court is to consider parol evidence.").

## III. Standard of Creditworthiness

Plaintiff argues the trial court erred in concluding that guarantor was not personally liable because Stark, Inc. met plaintiff's standard of creditworthiness exception to the guaranties. We agree.

The trial court found that

From the inception of the Bank's relationship with the Corporate Defendant the Bank never experienced difficulties with collection on any loan that it had made to the Corporate Defendant. Each loan was paid timely. Moreover, it never had to exercise its rights as to any collateral pledged for any such corporate indebtedness. It received timely financial statements and corporate tax returns from the Corporate Defendant and it found the Corporate Defendant's cash flow positions through-

out the banking relationship to be satisfactory. *All of these items were considered by the Bank in defining its "standard of creditworthiness."*

(emphasis added).

The last sentence in this finding regarding the standard of creditworthiness is not supported in the record. While these factors are considered by plaintiff when determining whether a borrower satisfies its standard of creditworthiness, there is no evidence in the record to support the finding that plaintiff determined Stark, Inc. met that standard. Defendants' expert witness, Travis Moon ("Moon") testified that "[he sees] nothing in the bank documents . . . where the bank says [defendants] have now met this standard." Yet Moon opined that the standard of creditworthiness was met because the 2001 loan documents did not reference a guaranty. Therefore, Moon concluded RHB&T did not require a guaranty for those loans and Stark, Inc. must have met the bank's standard of creditworthiness. The plain language of the guaranties releases a guarantor's liability for future loans "for which Borrower meets the Lender's standard of creditworthiness *based on Borrower's own assets and income* without the addition of a guaranty." (Emphasis added). Moon's conclusion is incorrect because RHB&T did consider the guarantor's assets and income in approving the 2001 loan. Therefore, the finding that Stark, Inc. met plaintiff's standard of creditworthiness is not supported by competent evidence in the record.

## IV. Conclusion

Since the trial court's conclusion of law that the guarantor is not personally liable for the debts of Stark, Inc. is not supported by the evidence, we reverse and remand to the trial court for entry of judgment against the guarantor Marcel Stark. The remaining portions of the trial court's order are affirmed.

Reversed and remanded.

Judge McGEE concurs.

Judge WYNN concurs in the result.