0638

PEE DEE STATE BANK, Respondent v. NATIONAL FIBER CORPORA-
TION, Earl M. Walls, and James R. Prosser, Appellants.

(340 S. E. (2d) 569)

Court of Appeals

---

*Steve Wukela, Jr.*, Florence, *for appellants.*

*T. Furman Brodie*, Florence, *for respondent.*

Heard Sept. 25, 1985.

Decided Feb. 18, 1986.

BELL, Judge:

This is an action on a note and guaranty agreement. The circuit court entered judgment against the guarantor, James R. Prosser, for the amount due on the note. Prosser appeals. We affirm.

The material facts are largely undisputed. In August 1981, Pee Dee State Bank loaned National Fiber Corporation $85,000. As security for the loan, the Bank required Earl M. Walls and Prosser, who were officers of the corporation, to execute guaranty agreements personally guaranteeing payment of the note. The loan was additionally secured by mortgages on real estate owned by Prosser and Walls.

In October 1981, after the Corporation had repaid the first loan, the Bank made a second loan of $85,000. The second loan was never repaid. The Corporation went into bankruptcy in April 1982. Thereafter, the Bank commenced this

action against Prosser and Walls on the guaranty agreements. Walls had left the jurisdiction and was never served. The action, therefore, proceeded solely against Prosser.

Prosser maintains he is not liable for the second loan because the guaranty agreement extended to the first loan only. The Bank, on the other hand, claims the guaranty was a continuing guaranty, securing all loans which the Bank might from time to time make to the Corporation. Alternatively, Prosser argues that if the guaranty was a continuing guaranty, he timely revoked it and, therefore, is not liable for the second loan.

I.

In determining the nature of the guarantee, we look first to the written agreement itself. *See Warner v. Weader*, 280 S. C. 81, 311 S. E. (2d) 78 (1983); *Martin v. Carolina Water Service, Inc.*, 280 S. C. 235, 312 S. E. (2d) 556 (Ct. App. 1984). Printed at the top of the instrument are the words "UNCONDITIONAL CONTINUING PERSONAL GUARANTY." In the body of the document, Prosser agrees to

... guarantee the full and prompt payment ... of any and all indebtedness ... of said Debtor [National Fiber Corporation] to said [Pee Dee State] Bank ... whether now owing or due, or which may hereafter, from time to time, be owing or due, and howsoever heretofore or hereafter created or arising or evidenced, to the extent of Ninety Thousand Dollars....

This language is plain on its face and leaves no room for the limiting construction Prosser attempts to place on it. We hold that Prosser's written guaranty was a continuing guaranty, not limited to the initial loan.

In support of his argument that the guaranty was intended to cover one loan only, Prosser relies on the language of a "Consideration Agreement" between him and Walls, executed contemporaneously with the guaranty agreement. The Consideration Agreement recites that Prosser and Walls have requested the Bank to make "a loan" to National Fiber Corporation and goes on to state that in consideration of the loan Walls and Prosser are personally

guaranteeing the note and are executing mortgages on their property as collateral for the loan. Prosser contends that the words "a loan" in the Consideration Agreement show the parties intended the guaranty agreement to cover only one loan. He also adduces testimony by himself and another witness that they understood the guaranty agreement was for one loan only.

Prosser's argument must be rejected for several reasons. In the first place, where the terms of the written guaranty agreement are clear and complete, extrinsic evidence of agreements or understandings contemporaneous with or prior to its execution cannot be used to contradict, explain, or vary its terms, in the absence of fraud, accident, or mistake in its procurement. *Ray v. South Carolina National Bank*, 281 S. C. 170, 314 S. E. (2d) 359 (Ct. App. 1984). Moreover, the Consideration Agreement represents nothing more than an understanding between Prosser and Walls. The Bank was not a party to the Consideration Agreement and is not bound by its terms. Finally, there is no inconsistency between the continuing guaranty agreement and the "a loan" language of the Consideration Agreement. The Consideration Agreement simply recites that Prosser and Walls have requested the Bank to make a loan to National Fiber Corporation; it does not prohibit the Corporation or the Bank from engaging in additional loan transactions nor does it limit the guaranty agreement to one loan.

## II.

In the alternative, Prosser argues that if the guaranty was a continuing guaranty, he revoked it before the Bank made the second loan.

A continuing guaranty is effective until revoked by the guarantor or terminated by operation of law. *Magnolia Petroleum Co. v. Harley*, 13 So. (2d) 84 (La. App. 1943). As a general rule, it can be revoked at any time before the creditor extends credit to the debtor. *Offord v. Davies* (1862) 12 C.B. (n.s.) 748, 142 Eng. Rep. 1336. However, revocation of a continuing guaranty does not affect the guarantor's liability for past advances to the debtor. *Furst v. Buss*, 104 Kan. 245, 178 P. 411 (1919).

In this case, the Bank made the second loan to the Corporation on October 27, 1981. On April 29, 1982, Prosser wrote a letter to the Bank "revoking any and all personal liability or guarantee for any future financial transactions ... with or in the interest of National Fiber, Inc. ...." Thus, the revocation came too late to affect Prosser's liability for the second loan.

Prosser attempts to avoid liability by claiming he revoked the guaranty around October 15, 1981. According to the record, Prosser's communications with the Bank in October concerned satisfaction of the mortgage he gave as additional security for the first loan; they did not pertain to the guaranty agreement. Prosser himself admitted he gave no "clear or direct" notice that he wished to revoke the guaranty agreement in October. As a result of the October communications, the Bank satisfied the mortgage and furnished a written satisfaction to Prosser in November 1981. Satisfaction of the mortgage, however, did not discharge Prosser's liability on the guaranty agreement, which remained in effect until he revoked it in April 1982.

Affirmed.

CURETON and GOOLSBY, JJ., concur.