550 S.E.2d 904

**Edward W. CRAFTON, Appellant,**

v.

**Wilbur B. BROWN, Respondent.**

**No. 3366.**

Court of Appeals of South Carolina.

Heard June 5, 2001.

Decided July 9, 2001.

Rehearing Denied Aug. 23, 2001.

348

Stuart W. Snow, of Dusenbury, Snow & McGee, of Florence, for appellant.

E. Leroy Nettles, Sr., of Nettles, Turbeville & Reddeck, of Lake City, for respondent.

GOOLSBY, Judge:

In this action to enforce a guaranty on a promissory note, Edward Crafton appeals the special referee's ruling on the admissibility of parol evidence to alter or amend the guaranty. Crafton also argues the referee erred in finding there was no mutual assent or meeting of the minds on the guaranty and the guaranty was not supported by consideration. We reverse and remand.

## FACTUAL BACKGROUND

In January 1988, John Wellman and Wilbur Brown traveled to Dahlonega, Georgia, to present an investment proposal for a plastic reclamation and recycling business to Edward Crafton.[1] Crafton was a wealthy man, and Wellman and Brown hoped he would bankroll the project.

---

[1]. Wilbur Brown was involved intimately with organizational efforts and he served as both a consultant to Wellman and the corporation and

Crafton liked their proposal and over the next year and a half, made several large loans to Wellman. In 1989, Crafton permitted Wellman to consolidate these loans into a single note and defer payment until August 1994 or until Wellman Industries made an initial public offering of its stock. Accordingly, Wellman signed a promissory note for $2,395,484.00 on August 18, 1989. At the same time, Brown executed a guaranty for $500,000.00. When the note came due in 1994, Wellman defaulted.

In 1996, Crafton filed this action to collect on Brown's guaranty. Brown defended, arguing the note was part of a larger collateral oral agreement in which Crafton allegedly pledged to loan Wellman an additional twenty to twenty-five million dollars. Brown contended that the guaranty was conditioned upon the loaning of the money by Crafton to Wellman, and that Crafton's failure to loan the money invalidated the guaranty. Brown further asserted Crafton's failure to loan additional money resulted in a failure of consideration for the guaranty.

At trial, Brown sought to prove through the admission of parol evidence that a collateral contract existed. Crafton objected, arguing the guaranty was unambiguous on its face and parol evidence was not admissible to vary its terms. The referee ruled, however, that the parol evidence of a larger agreement was admissible. Based upon the parol evidence admitted at trial, the referee found that the guaranty was unenforceable because there was no meeting of the minds of the parties at the time the guaranty was executed and the guaranty was not supported by consideration. Crafton appeals.

## LAW/ANALYSIS

### Standard of Review

A guaranty is a "promise to answer for the payment of some debt or the performance of some duty in case of the failure of another person who is himself in the first instance,

---

from time to time loaned his own money to Wellman and Wellman Industries in these efforts.

liable to such payment or performance."[2] An action to collect on a guaranty is an action at law.[3] In an action at law, an appellate court will correct errors of law but must defer to the trial court's factual findings and affirm unless there is no evidence reasonably supporting those findings.[4]

### Parol Evidence

Crafton first asserts the referee erred in admitting parol evidence to vary the terms of the guaranty because the guaranty was unambiguous. We agree.

 "The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument."[5] "[W]here the terms of [a] written guaranty agreement are clear and complete, extrinsic evidence of agreements or understandings contemporaneous with or prior to its execution cannot be used to contradict, explain, or vary its terms, in the absence of fraud, accident, or mistake in its procurement."[6]

The promissory note stated:

For value received, the undersigned Maker promises to pay to the order of EDWARD W. CRAFTON ("Holder"), on August 31, 1994, at such place as Holder may reasonably designate in writing, the principal sum of TWO MILLION THREE HUNDRED NINETY–FIVE THOUSAND FOUR HUNDRED EIGHTY–FOUR ($2,395,484.00) DOLLARS ("Principal Sum"), with interest thereon until paid at

---

2. *J.L. Mott Iron Works v. Clark;* 87 S.C. 199, 203, 69 S.E. 227, 228 (1910).

3. *Twelfth RMA Partners, L.P. v. National Safe Corp.,* 335 S.C. 635, 518 S.E.2d 44 (Ct.App.1999).

4. *Crary v. Djebelli,* 329 S.C. 385, 496 S.E.2d 21 (1998).

5. *Gilliland v. Elmwood Properties,* 301 S.C. 295, 302, 391 S.E.2d 577, 581 (1990).

6. *Pee Dee State Bank v. National Fiber Corp.,* 287 S.C. 640, 643, 340 S.E.2d 569, 570–71 (Ct.App.1986).

the simple interest rate of ten percent (10%) per annum computed on the basis of a 360 day year.

Upon the closing of a public offering of all or any part of any class of securities issued by J.G. Wellman Industries, Inc. pursuant to an effective registration statement under the Securities Act of 1933, as amended, the entire Principal Sum and accrued interest thereon shall become due and payable without further notice.

The guaranty stated:

In the consideration of the credit extended on a Promissory Note dated August 18, 1989 from John G. Wellman to Edward Crafton ("Holder") in the amount of Two Million Three Hundred Ninety–Five Thousand Four Hundred Eighty–Four and 00/100 ($2,395,484.00), I guarantee the payment of Five Hundred Thousand and 00/100 ($500,000.00) Dollars of the above referenced note.

█ The guaranty explicitly recites that it is in consideration of the credit extended in the amount of $2,395,484.00. In view of the clear and unambiguous nature of the language of the guaranty and the recitation of its consideration as the $2,395,484.00 promissory note, we conclude the referee improperly admitted parol evidence.

Brown cites *Iseman v. Hobbs*[7] in support of his argument that parol evidence was properly admitted in this case. In *Iseman*, this court held parol evidence was admissible when the language of consideration was not contractual. The *Iseman* court explained:

[I]f the consideration recited is an act or forbearance, as distinguished from a promise or covenant, it may be shown that it did not take place and that therefore the writing is gratuitous and unenforceable. On the other hand, if a promise or covenant is recited as having been made as consideration, this recital cannot be contradicted, explained, or varied by extrinsic evidence. In the present case, the phrase "for value received" is not a recital of a promise or covenant, but a recital that an act (i.e., the receipt of value)

---

7. 290 S.C. 482, 483, 351 S.E.2d 351, 352 (Ct.App.1986).

has occurred. *Contradiction of the fact of receipt* would in no way alter the contractual terms of the note.[8]

Brown sought to introduce evidence that the promissory note and guaranty were part of a larger contract to loan between twenty and twenty-five million dollars, not that the consideration recited was never paid over.[9] This is precisely the evidence the parol evidence rule seeks to bar.[10] Accordingly, the referee erred when he admitted parol evidence to alter the terms of the guaranty.

## Mutual Assent/Meeting of the Minds

Crafton next argues that the referee erred in finding there was no mutual assent at the time the guaranty was executed. Crafton argues mutual assent was proved because he accepted the guaranty contemporaneously with the execution of the note. We agree.

 "A contract of guaranty, like every other contract, can only be made by the mutual assent of the parties. If the guaranty is signed by the guarantor at the request of the other party, *or if the latter's agreement is contemporaneous with the guaranty, . . . the mutual assent is proved,* and the delivery of the guaranty to him or for his use completes the contract." [11] Because the guaranty and promissory note were executed simultaneously, there was no need for further evidence of a meeting of the minds.

We find it irrelevant that Crafton did not think anything of the guaranty at the time it was executed. Crafton primarily relied on the promissory note and looked to Wellman for

8. *Id.* at 484, 351 S.E.2d at 352–53 (emphasis added).

9. The parties agreed that Crafton loaned Wellman $2,395,484.00.

10. *See Ray v. South Carolina Nat'l Bank, Inc.,* 281 S.C. 170, 174, 314 S.E.2d 359, 361 (Ct.App.1984) ("An oral agreement between the parties, made contemporaneously with the execution of the note or prior thereto, relating to [a] condition not expressed in the note is incompetent to change the contract as represented on the face of the note.").

11. *Hudepohl Brewing Co. v. Bannister,* 45 F.Supp. 201, 203 (D.S.C. 1942) (emphasis added).

payment under the note. Brown's guaranty only assumed importance after Wellman's default.[12]

## Consideration

Crafton next argues that the referee erred in finding a lack of consideration to support the guaranty. We agree.

In finding the guaranty was without consideration, the referee's order noted Brown "did not get anything as a result of delivering the document." This was error, however, because Crafton was not required to show that Brown received a benefit under the guaranty.

Generally, when a guaranty is executed at the same time as the note, the consideration for the note functions as consideration for the guaranty.[13] Moreover, "it is not necessary that the guarantor derive any benefit from either the principal contract or the guaranty" as long as there is a benefit to the obligor or a detriment to the creditor.[14]

In the present case, Wellman received a benefit from the note because he was able to defer repayment of the $2,395,484.00 loan until 1994 or until the closing of Wellman Industries' initial public offering. An agreement to extend the debtor's payment date is sufficient consideration for a guaranty by a third person.[15]

Brown himself testified Wellman received a benefit from the "long maturity on the note" because it gave him "a year or two to operate at a profit and then carry [the company] to an initial public offering...." Brown also stated "[t]he purpose of the guarantee was to clean up the balance sheet of J.G. Wellman Industries" and his signature on the guaranty "en-

---

**12.** *See* 38A C.J.S. *Guaranty* § 12b (1996) (stating notice of acceptance of a guaranty is not required when the principal contract is contemporaneous with the guaranty).

**13.** *Id.* § 27.

**14.** *Id.* § 29.

**15.** *Hope Petty Motors v. Hyatt,* 310 S.C. 171, 425 S.E.2d 786; *see also* 38A C.J.S. *Guaranty* § 30 (stating a creditor's agreement to extend the time for payment of a debt is sufficient consideration for a guaranty).

hanced" the cleaning-up process. Thus, we find sufficient consideration to support the guaranty.

## CONCLUSION

We find that the referee erred in admitting parol evidence of a collateral agreement between the parties to alter the guaranty. We further find that the guaranty is unambiguous, that there was a meeting of the minds between the parties, and that the guaranty was supported by valid consideration. Accordingly, we reverse the judgment for Brown and remand for the entry of judgment for Crafton.

**REVERSED AND REMANDED.**

HEARN, C.J. and CONNOR, J., concur.