THIS
 OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
 J.D., Inc. of
 Hilton Head d/b/a Hilton Head Glidden, Respondent,
 
 

v.

 
 
 
 A-Team Surface
 Technologies, Inc., Charles A. Stundzia, and Stephanie Lamb, Defendants,
 
 
 of whom
 Stephanie Lamb is Appellant.
 
 
 
 
 

Appeal From Beaufort County
Carmen T. Mullen, Circuit Court Judge

Unpublished Opinion No. 2010-UP-424
 Submitted September 1, 2010  Filed
September 28, 2010

AFFIRMED IN PART, REVERSED IN PART, and
 REMANDED

 
 
 
 Michael W. Mogil, of Hilton Head Island,
 for Appellant.
 Russell P. Patterson, of Hilton Head
 Island, for Respondent.
 
 
 

PER CURIAM: This appeal arises out of the
 grant of summary judgment in favor of Respondent J.D., Inc. of Hilton Head
 d/b/a Hilton Head Glidden (Glidden).  Appellant Stephanie Lamb argues the
 circuit court erred in granting summary judgment because the terms of the
 contract are ambiguous, thus presenting an issue of fact to be resolved at
 trial.[1]
FACTS/PROCEDURAL HISTORY
Glidden entered into a credit
 and sales agreement with A-Team Surface Technologies, Inc. (A-Team), a business
 owned by Lamb's ex-husband, Charles Stundzia.  The agreement provided for a
 $5,000 requested credit limit, with the balance due by the tenth of the month
 for a two percent discount and due within thirty days of billing to prevent
 default.  Any unpaid portion of the balance after thirty days would be subject
 to a 1.5% service charge.  The agreement also provided for the payment of
 reasonable attorney's fees, consisting of fifteen percent of the balance due,
 plus all costs.  Finally, the agreement contained the following provision:
 "Customer will be notified by Glidden if Customer is approved for credit
 and at what credit limit.  Glidden expressly reserves the right, at any time,
 for any reason, to cancel the right to purchase on credit in the future."  
Underneath the signature line
 in the credit and sales agreement is a personal guarantee signed by Stundzia
 and Lamb:

PERSONAL GUARANTEE

 In
 consideration of the extension of credit to the above Customer, I/we personally
 and individually guarantee payment of any and all future or current indebtedness,
 including costs and attorney's fees on demand.  This guarantee will remain in
 full force and effect as to new purchases until written notice of its
 termination is received by Hilton Head Glidden/Beaufort Glidden, Attn: David
 Harter, 13 New Orleans Road, Hilton Head Island, South Carolina 29928.

Glidden initiated the present
 action by filing a nonjury complaint to collect a debt arising out of the
 account from A-Team, Stundzia, and Lamb.[2] 
 Lamb answered the complaint and filed counterclaims for contract termination
 and contract modification.  Glidden subsequently filed a motion for summary
 judgment.  The trial court granted summary judgment in favor of Glidden after a
 hearing and awarded Glidden $13,330.58 for breach of contract, plus $6,198.71
 for prejudgment interest accrued through February 1, 2008.  The court also
 awarded $2,929.39 in attorney's fees, which is one third of the amount awarded
 in principal and interest, for a total judgment of $22,458.68.  Lamb filed a motion
 to alter or amend pursuant to Rule 59(e), SCRCP, which was denied.  This appeal
 followed. 
STANDARD OF REVIEW
When reviewing the grant of a
 motion for summary judgment, the appellate court applies the same standard that
 governs the trial court.  Wogan v. Kunze, 379 S.C. 581, 585, 666 S.E.2d
 901, 903 (2008).  Summary judgment is proper when no genuine issue exists as to
 any material fact and the moving party is entitled to judgment as a matter of
 law.  Rule 56(c), SCRCP.  "On appeal from an order granting summary
 judgment, the appellate court will review all ambiguities, conclusions, and
 inferences arising in and from the evidence in a light most favorable to the [nonmoving]
 party below."  USAA Prop. & Cas. Ins. Co. v. Clegg, 377 S.C.
 643, 653, 661 S.E.2d 791, 796 (2008).  "[I]n cases applying the
 preponderance of the evidence burden of proof, the [nonmoving] party is only
 required to submit a mere scintilla of evidence in order to withstand a motion
 for summary judgment."  Hancock v. Mid-South Mgmt. Co., 381 S.C.
 326, 330, 673 S.E.2d 801, 803 (2009).  
LAW/ANALYSIS
The sole issue on appeal is
 whether summary judgment was appropriate.  Lamb asserts the existence of an
 ambiguity creating a question of fact precluding summary judgment because the
 credit and sales agreement secured by her personal guarantee did not provide
 for the creation of debt greater than $5,000.  We disagree.
As a preliminary issue, the
 trial court found that Lamb signed the agreement as a personal guarantor.  Lamb
 argued before the trial court that she executed the credit and sales agreement
 on behalf of her husband's business.  However, Lamb claimed she did not
 intentionally sign a personal guarantee when she printed her name on the
 signature line for the credit and sales agreement and signed her name
 underneath the personal guarantee section.  The trial court dismissed this
 argument and concluded Lamb's admission that she signed the document, which
 clearly stated in bold capital letters "PERSONAL GUARANTEE," supports
 her status a personal guarantor on the note.  Lamb abandoned this argument on
 appeal, asserting only that her personal guarantee is limited to $5,000. 
 "[A]n 'unchallenged ruling, right or wrong, is the law of the case and
 requires affirmance.'"  Jones v. Lott, 387 S.C. 339, 346, 692
 S.E.2d 900, 903 (2010) (quoting First Union Nat'l Bank of S.C. v. Soden,
 333 S.C. 554, 566, 511 S.E.2d 372, 378 (Ct. App. 1998)).  Therefore, we affirm
 the finding that Lamb is a personal guarantor of the credit and sales
 agreement.
Accordingly, we next consider
 whether a dispute exists as to Lamb's personal liability for any debt greater
 than $5,000.  Whether the language of a contract is ambiguous is a question of
 law.  S.C. Dep't of Natural Res. v. Town of McClellanville, 345 S.C.
 617, 623, 550 S.E.2d 299, 302-03 (2001).  The construction of an ambiguous
 contract is a question of fact.  Skull Creek Club Ltd. P'ship v. Cook &
 Book, Inc., 313 S.C. 283, 286, 437 S.E.2d 163, 165 (Ct. App. 1993).  An
 ambiguous written agreement is one that is capable of being understood in more
 than one way, or is an agreement unclear in meaning because it expresses its
 purpose in an indefinite manner.  Klutts Resort Realty, Inc. v. Down'Round
 Dev. Corp., 268 S.C. 80, 89, 232 S.E.2d 20, 25 (1977).  "Where the language
 of a contract is plain and capable of legal construction, that language alone
 determines the instrument's force and effect."  Jordan v. Sec. Group,
 Inc., 311 S.C. 227, 230, 428 S.E.2d 705, 707 (1993).  Summary judgment is
 not proper when there is a question as to the construction of a written
 contract and the contract is ambiguous because the intent of the parties cannot
 be ascertained from the four corners of the agreement.  HK New Plan Exch.
 Prop. Owner I, LLC v. Coker, 375 S.C. 18, 23, 649 S.E.2d 181, 184 (Ct. App.
 2007).  
A guarantee is a contract.  TranSouth
 Fin. Corp. v. Cochran, 324 S.C. 290, 294, 478 S.E.2d 63, 65 (Ct. App.
 1996).  A note and guarantee are two separate contracts.  First Sav. Bank,
 FSB v. Capital Investors, 318 S.C. 555, 557, 459 S.E.2d 307, 308 (1995).   
 However, "[t]he general rule is that, in the absence of anything
 indicating a contrary intention, where instruments are executed at the same
 time, by the same parties, for the same purpose, and in the course of the same
 transaction, the courts will consider and construe the instruments
 together."  Klutts, 268 S.C. at 88, 232 S.E.2d at 24.  "Construing
 contemporaneous instruments together means simply that if there are any
 provisions in one instrument limiting, explaining, or otherwise affecting the
 provisions of another, they will be given effect between the parties so that
 the whole agreement as actually made may be effectuated."  Id. at
 88-89, 232 S.E.2d at 24.  Conversely, when the terms of a written guarantee
 agreement are clear and complete, extrinsic evidence of agreements or
 understandings contemporaneous with or prior to its execution cannot be used to
 contradict, explain, or vary its terms.  Pee Dee State Bank v. Nat'l Fiber
 Corp., 287 S.C. 640, 643, 340 S.E.2d 569, 570-71 (Ct. App. 1986).  
In the present matter, the
 personal guarantee provides that Lamb is individually responsible for "any
 and all future or current indebtedness."  The guarantee also indicates it
 is "in consideration of the extension of credit to the above
 Customer," referencing the credit and sales agreement that is located in
 the same document, directly preceding the personal guarantee.  Even though a
 guarantee is considered to be a separate contract, both the credit and sales
 agreement and the guarantee were executed at the same time, by the same
 parties, for the same purpose, and in the course of the same transaction.  See First Sav. Bank, 318 S.C. at 557, 459 S.E.2d at 308; Klutts, 268
 S.C. at 88, 232 S.E.2d at 24.  Further, the guarantee references the credit and
 sales agreement, which supports the inference that the two documents are to be
 read together.
In Pee Dee State Bank,
 the court of appeals scrutinized a guarantee executed as security for an
 $85,000 loan to a corporation.  287 S.C. at 641, 340 S.E.2d at 570.  The loan
 was secured by the personal guarantees of two of its officers.  Id. 
 After the corporation repaid the first loan, the bank loaned another $85,000,
 which was never repaid.  Id.  One officer contested his liability for
 the second loan, claiming his personal guarantee was only for the first loan.  Id. at 642, 340 S.E.2d at 570.  The court found the guarantee, entitled
 "UNCONDITIONAL CONTINUING PERSONAL GUARANTY" in all caps, was plain
 on its face and not limited to the initial loan.  Id. at 642, 340 S.E.2d
 at 570.  
Notwithstanding, Pee Dee
 State Bank is reconcilable with the rule of construing related documents
 together enunciated in Klutts, which has been cited frequently in this
 state.  See, e.g., Cafe Assocs. v. Gerngross, 305 S.C. 6, 10, 406
 S.E.2d 162, 164 (1991); Sentry Eng'g & Constr., Inc. v. Mariner's Cay
 Dev. Corp., 287 S.C. 346, 350, 338 S.E.2d 631, 633 (1985); Wilbur Smith
 & Assocs. v. Nat'l Bank of S.C., 274 S.C. 296, 299, 263 S.E.2d 643, 645
 (1980); Ecclesiastes Prod. Ministries v. Outparcel Assocs., 374 S.C.
 483, 498-99, 649 S.E.2d 494, 502 (Ct. App. 2007).  The guarantee in Pee Dee
 State Bank was, by its terms, a continuing guarantee for full payment of
 all debts "whether now owing or due, or which may hereafter, from time to
 time, be owing or due, and howsoever heretofore or hereafter created. . .
 ."  Pee Dee State Bank, 287 S.C. at 642, 340 S.E.2d at 570.  The
 court refused to consider extrinsic evidence of agreements or understandings
 contemporaneous with, or prior to, its execution to explain the terms in the
 guarantee because the guarantee was clear and complete on its own.  Id. at 643, 340 S.E.2d at 570-71.  However, as indicated, the guarantee signed by
 Lamb in this case is contained within the same document as the credit and
 sales agreement with the requested $5,000 credit limitation; at a
 minimum, for summary judgment purposes, this fact distinguishes this case from
 the unconditional guarantee found in Pee Dee State Bank in
 which no such additional fact raised a question as to the intent of the
 parties. 
Further, although not
 discussed, the indication that the guarantee in Pee Dee State Bank was
 unconditional and continuing could be interpreted as a contrary intention that
 the guarantee should not be considered together with the other
 contemporaneously executed documents.  Cf. Klutts, 268 S.C. at
 88, 232 S.E.2d at 24 (construing instruments executed at the same time together
 "in the absence of anything indicating a contrary intention").  In
 the instant case, the personal guarantee included at the bottom of the two-page
 credit and sales agreement does not contain any indication it should not be
 read together with the credit and sales agreement; in fact, the guarantee
 references the credit and sales agreement by referring to the above customer.  
Ultimately, if the documents
 are construed together, there is more than one inference that may be drawn
 therefrom.  Glidden views the terms of the guarantee as insuring payment of
 "all future and current indebtedness."  Lamb, on the other hand,
 submitted an affidavit averring she read the agreement as a whole and believed
 she was only guaranteeing a credit limit up to $5,000.  Therefore, because at
 least a mere scintilla of evidence supports Lamb's position, we reverse the
 grant of summary judgment and the award of damages.  See USAA Prop.
 & Cas. Ins. Co. v. Clegg, 377 S.C. 643, 653, 661 S.E.2d 791, 796 (2008); Hancock v. Mid-South Mgmt. Co., 381 S.C. 326, 330, 673 S.E.2d 801, 803
 (2009).
CONCLUSION
For the foregoing reasons, we
 affirm the finding that Lamb is a personal guarantor of the credit and sales
 agreement.  However, we reverse the grant of summary judgment on the disputed
 issue of whether Lamb's guarantee extends beyond the requested credit limit and
 remand this issue for trial.  Accordingly, the order of the trial court is 
AFFIRMED IN PART, REVERSED
 IN PART, and REMANDED.
WILLIAMS, PIEPER, and
 KONDUROS, JJ., concur.

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.  
[2] A-Team and Stundzia are not parties to the present
 appeal.